Health. Let me make sure that the litigants are on the line. Ms. Hawkins? Yes. All right. And you can see and hear me all right? Yes. Thank you. Good. And Ms. Fang? Good morning. Good morning, your honors. I'm here and I can hear you fine. Okay, great. You've got five minutes each per side, but Ms. Hawkins, you've reserved one minute for rebuttal. So that gives you four minutes out of the gate. So the floor is yours. You may proceed. Good morning, your honors. If you may please the court, I am Marva Hawkins, a plan pro se. This is an employment discrimination case on appeals from the U.S. District Court for the Southern District with District Judge Nelson Roman. The case was filed in January 2017. And in September 2019, Judge Roman granted the appellee's request motion for summary judgment. And the question this morning is whether the district court erred in making that decision. During my discussion this morning, I will point on some of the issues that were raised by Justice Roman when he made his decision. In his order and opinion, Justice Roman relied very heavily on the information provided by the respondent but to the dismissal or exclusion of information provided by the plaintiff. However, in Talbert versus Queens College, the court had ruled that in a trial court is required to consider the evidence in light that is most favorable to the non-moving party, but that was not granted in this case. Judge Roman also noted that the plaintiff did not provide any information to show temporal proximity to the protective job activity and the adverse job action. And during this discussion, I will show that that information was submitted, but it was excluded. When I started working for the Office of Mental Health in 2010, I started with over 10 years investigative experience. I am certified by Cornell University and the City of New York in EEO investigation. During my tenure with the Office of Mental Health, for almost seven years, I received all satisfactory performance evaluations. I was assigned to cover the most facilities and I was often assigned to assist my peers who were having problems with their cases. I was also the guest investigator for more other state agencies than any of my peers. And these additional responsibilities were given to me because of my training and experience as an EEO investigator. However, and based on carrying out my duties, I should say that Elaine Bartley started working for the Office of the Governor's Office of Employee Relations are about February 2015. And her first case review of one of my cases was conducted in May, around about May 2015. Based on her critique of that case, I responded to her by saying that the format that I used was that which I was trained by her predecessor. I then requested for her to have a meeting with the team to let us know how she would like the case investigations done. That meeting was not held until about February 2016. However, as a result of my having responded to her, she notified my then supervisor, Marisol Nunez Rodriguez, that I should not have contacted her and going forward that Ms. Rodriguez needs to review and approve all of my cases prior to submission to her. So, in doing this case, the judge noted that decision was made by the agency because of my core performance, my ongoing core job performance, and that I had not shown any temporal proximity. However, I showed that in October 2015, I filed a New York State Division of Human Rights complaint against Elaine Bartley at GOA. And I filed that complaint because as an investigator, I noticed that race was a factor in how cases were being handled. Particularly, I was working on a case with a Latino for whom I was told that the case should not be investigated. However, GOA has what they call a 10-step process for investigation, and those are the 10 steps that all investigators must use in showing their cases. And those 10 steps indicated that all complaints had to be investigated. Mr. Hawkins, let me ask you a question. So, you filed a complaint in October of 2015, right? Yes, Your Honor. And that was the first complaint that you filed, is that right? Yes, Your Honor. But Judge Ramon mentioned and focused on the fact that there were complaints about you and there was a process already in place before then to get you on a performance improvement plan. Is that accurate? That is not accurate, Your Honor. And what Judge Ramon referenced was, and he indicated that this started in May 2015, and that is to what I referred earlier when I spoke about the incident with Elaine Bartley in May 2015. And at that point, it was not given to me as a performance issue. My supervisor, Marisol Nunez-Rodriguez, simply said to me that Elaine did not like the fact that I was communicating directly with her. And going forward, I must go through Marisol. In fact, I asked at that time, what was the reason why this decision was made? And I was not given an answer. Okay. So, I see your time is up, but you've got another minute for rebuttal. So, we'll now hear from Ms. Fang. And then when she's finished, then you can have a minute to respond. Thank you. Ms. Fang? Good morning, Your Honors. And may it please the Court, Linda Fang on behalf of the State Appellees. The District Court properly granted summary judgment here. The record shows that plaintiff was consistently subject to contemporaneously documented feedback about her work product more than five months before she ever engaged in any protected activity. And the record also shows that not only these complaints, that they were consistent, and they were consistent across both prior and after plaintiff's protected activity, but that they were made by at least four different officials across three different state agencies. And it was these pre-protected activity complaints that led plaintiff to be placed on a performance improvement plan, a process that started before plaintiff's first complaint against her supervisor at the Office of Mental Health. And it was, in fact, plaintiff's unwillingness or lack of improvement of performance during that performance evaluation period that ultimately led to her termination, which is the only actionable adverse action for her retaliation claims. And I think without belaboring all the points that we made and set forth in the briefs, it's just worth pointing out, the lapses here were not minor. They were not formatting errors, and they were not small issues. The one example we highlighted in our brief, which is that sealed appendix, pages 35 to 37, plaintiff identified the wrong respondent in a serious sexual harassment case, a mistake that ultimately precluded the agency from being able to take disciplinary action against the wrongdoer because of the expiration of statute limitations. And plaintiff here had a very important job. She investigated allegations of discrimination and retaliation made by state employees. Those investigations have real consequences for state agencies. And just even a passing glance, I think the documents and the reports and the comments and the amount of supervisory comments, the amount of review, and the amount of questions that were posed by various different people towards plaintiff's work product shows that they were consistently unclear, they were incomplete, and they were conclusory. She didn't provide enough details to support her findings, and that was the fundamental aspect of her job. And on this record, no reasonable back finder could find that plaintiff's termination had anything to do with her protected activity or that the reasons that the agency provided for her termination after they gave her ample performance and feedback and the ability to correct those deficiencies were untrue or pretextual. And unless the court has any questions, we ask that you affirm the judgment below. Okay. All right. I hear no questions from the panel. We'll go back to Ms. Hawkins for a minute of rebuttal. The information provided, Your Honor, is not correct. I was placed on a performance improvement plan in February 2016, and that was after I filed my complaints. And in fact, the human rights in providing this information indicated that the agency started complaining about my performance after I filed my discrimination complaint. And the fact and the case that Ms. Fang referenced, her information is incorrect. When I received the case, I was given – I interviewed just a complainant, and at that point, GOA told me not to take any further action on the case. The case sat for three years before GOA made a decision, and hence that was the reason why no action could have been taken. The complainants gave me the incorrect information for the respondents. I was unable to have taken any action on the case to disprove it otherwise, because GOA instructed me not to have taken any action on the case. In terms of her retaliation, when I filed to the agency, the agency disregarded its own policies. No one, the counsel, the commissioner, deputy commissioner, no one acknowledged my complaints about retaliation. And when the commissioner spoke to Schaefer, the deputy commissioner, about how to handle my complaints, she responded by saying she and West Alaska would come up with a plan. That was in January, and that plan was the performance, the PIP, on which I was placed in February. I was doing excellent until I complained. Oh wait, can I interrupt? I think Judge Rahman focused on June 2015 verbal counseling from Nunez Rodriguez, and then an October 2015 representation by Waslowski about your performance issues that began the process of getting you into a PIP. Do you disagree with that? Yes, Your Honor. Because what, there's also information that was provided in which Waslowski was, it's an email communication with Schaefer in which she admitted that I had never received any prior counseling. That my son Nunez told her I never received any prior counseling, and yet she went forward with her decision. In fact, when they were coming up with the PIP, it's shown in the record that there was a meeting with HR in which they were trying to concoct how should they include the cases that were late. Because there was Waslowski, and still tried me for the lateness. So, I never received any prior counseling in terms of agency complained about me. I was never told this. What the agency did was post my termination, they then tried to find evidence to support that which they had done, such as getting email, pulling up my email, and my email communication with my peers. But prior to my termination, I was never told that any agency had complained about my work. In fact, I was sent to more agency than any of my peers. But if agencies were complaining about my performance, why did the agency continue to send me as guest investigator to other agencies? All right. Okay. Well, I see the time is up. We will reserve decision. Thank you both. Thank you, Your Honors. Thank you. That concludes our arguments for this morning. So, the court will stand adjourned. Let me before we do that, let me just thank our Courtroom Deputy, Ms. Rodriguez, and the tech people who keep us up and running. This went very well. It's a snowy day, and I'm grateful to them, as I'm sure the other panelists are as well. So, Ms. Rodriguez, you can adjourn court. Court is adjourned.